1

                    UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

UNITED STATES OF AMERICA        .        Criminal No. 1:11cr88
                                .
     vs.                        .        Alexandria, Virginia
                                .        March 2, 2011
CATHERINE KISSICK,              .        10:00 a.m.
                                .
              Defendant.        .
                                .
.   .   .   .   .   .   .   .   .   .

              TRANSCRIPT OF PRE-INDICTMENT PLEA HEARING
               BEFORE THE HONORABLE LEONIE M. BRINKEMA
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:             CHARLES F. CONNOLLY, AUSA
                                United States Attorney's Office
                                2100 Jamieson Avenue
                                Alexandria, VA 22314
                                   and
                                PATRICK F. STOKES, ESQ.
                                United States Department of Justice
                                Criminal Division, Fraud Section
                                1400 New York Avenue, N.W.
                                Washington, D.C. 20005


FOR THE DEFENDANT:              DOUGLAS A. STEINBERG, ESQ.
                                107 North Payne Street
                                Alexandria, VA 22314
                                   and
                                KENTON V. SANDS, ESQ.
                                Sands, White & Sands, P.A.
                                760 White Street
                                Daytona Beach, FL 32114


OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Fifth Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595


                        (Pages 1 - 48)

          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

P R O C E E D I N G S

(Defendant present.)

THE CLERK:  Criminal Case 11-88, United States of America v. Catherine Kissick.  Would counsel please note their appearances for the record.

MR. CONNOLLY:  Good morning, Your Honor.  Charles Connolly and Patrick Stokes on behalf of the United States.

THE COURT:  Good morning.

MR. STEINBERG:  Good morning, Your Honor.  Douglas Steinberg representing the defendant, Ms. Kissick, who is present on terms of her pretrial release, and I'll also introduce Kenton Sands --

MR. SANDS:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. STEINBERG:  -- who I will be in a second moving in pro hac vice.

THE COURT:  I've already signed the order.

MR. STEINBERG:  Thank you, Your Honor.

And to perhaps head off one preliminary question, both Mr. Sands and myself together went over the plea documents with our client, so she had the benefit of both counsel at the time.

THE COURT:  Thank you, Mr. Steinberg.

All right, Ms. Kissick, come up to the lectern.  The clerk is going to place you under an affirmation.

CATHERINE LEE CROCKETT KISSICK, DEFENDANT, AFFIRMED

1           THE COURT:  All right, Ms. Kissick, you have now taken a

2    promise to tell the truth in answering the Court's questions this

3    morning.  If you should lie in answering any question, the

4    government could prosecute you for a new and separate crime called

5    perjury.  Do you understand that?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  For the record, what is your full name?

8           THE DEFENDANT:  Catherine Lee Crockett Kissick.

9           THE COURT:  All right.  And, Ms. Kissick, how old are

10   you?

11          THE DEFENDANT:  Fifty.

12          THE COURT:  How much education have you completed?

13          THE DEFENDANT:  I have a master's degree.

14          THE COURT:  I assume therefore that you don't have any

15   problem reading, writing, understanding, or speaking English; is

16   that correct?

17          THE DEFENDANT:  Correct.

18          THE COURT:  And are you a United States citizen?

19          THE DEFENDANT:  Yes, I am.

20          THE COURT:  Are you presently on probation or parole

21   from any other criminal matter?

22          THE DEFENDANT:  No.

23          THE COURT:  Are you at this time under the care of a

24   doctor for any physical or mental condition?

25          THE DEFENDANT:  No.

4

1          THE COURT:  Within the last 24 hours, have you taken any
2  medication, whether by prescription or over the counter?
3          THE DEFENDANT:  I took Benadryl this morning because of
4  allergies.
5          THE COURT:  All right.  Has that medication made you at
6  all drowsy or made it difficult for you to understand what's going
7  on around you?
8          THE DEFENDANT:  No.
9          THE COURT:  All right.  Other than that medication,
10  anything else?
11          THE DEFENDANT:  No.
12          THE COURT:  Are you at this time under the influence of
13  any alcohol or drugs?
14          THE DEFENDANT:  No.
15          THE COURT:  And, Ms. Kissick, we have several documents
16  we need to go over this morning in connection with your plea, and
17  the first document has the title "Waiver of an Indictment," and I
18  see what appears to be your signature and that of counsel.  Did
19  you, in fact, sign the waiver of indictment?
20          THE DEFENDANT:  Yes, I did.
21          THE COURT:  And was that signed today?
22          THE DEFENDANT:  Yes.
23          THE COURT:  But before today, had you gone over it with
24  counsel?
25          THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Now, did your lawyers explain to

2    you that under the laws and Constitution of the United States, you

3    have an absolute right to require that the federal prosecutors go

4    before a group of people called a federal grand jury with the

5    conspiracy charge that they want to file against you today?  Do

6    you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, a federal grand jury is made up of

9    anywhere from 16 to 23 ordinary citizens who are brought together

10   on a random basis to the court, and the job of a federal grand

11   jury is to act as a kind of gatekeeper or a reviewing system of

12   criminal cases.  Specifically, the job of the grand jury is to

13   review potential criminal cases to determine whether or not they

14   should be actually filed in open court and the person actually

15   brought into court and be charged.

16         What happens in the grand jury process, which is

17   completely secret, is a federal prosecutor goes into the grand

18   jury room, advises the grand jury that the prosecutor believes the

19   person may have violated certain federal criminal laws, and then

20   presents evidence to the grand jury supporting that position.

21         The evidence could be the testimony of witnesses, it

22   could be physical exhibits, again different types of evidence, but

23   at the end of the presentation, if at least 12 members of the

24   grand jury are satisfied that the evidence presented establishes

25   probable cause to believe that the crime or crimes have been

1   committed by the person who the government wants to charge, then

2   the grand jury issues a document called an indictment, and that is

3   normally how a felony-level criminal case begins in federal court.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  That grand jury review process is considered

7   to be a protection of a person's individual rights, because it

8   exists to make sure that a federal prosecutor doesn't just come

9   into court and openly file serious criminal charges against a

10   person without there being a genuine factual basis to support such

11   charge or charges.  Do you understand that?

12            THE DEFENDANT:  Yes.

13           THE COURT:  Now, a person can give up her right to that

14   grand jury process, and that would be done by signing a waiver of

15   indictment such as the one you have signed.  The word "waiver" in

16   the law means to give something up, so by waiving indictment,

17   you're giving up that grand jury review process, and instead,

18   you're authorizing the prosecutors to come to court and file this

19   conspiracy charge against you using a document called a criminal

20   information which has not been tested by the grand jury.

21            Do you understand that?

22            THE DEFENDANT:  Yes, I do.

23           THE COURT:  And did you understand all of that before

24   you signed the waiver?

25            THE DEFENDANT:  Yes, I did.

1          THE COURT:  All right.  Now, other than the plea

2    agreement, which we will get to in a moment, but other than that,

3    has anybody promised or suggested to you that by waiving

4    indictment, you would get a lighter sentence or more favorable

5    treatment by the Court?

6          THE DEFENDANT:  No.

7          THE COURT:  Has anyone put any force or pressure on you

8    to waive indictment today?

9          THE DEFENDANT:  No.

10         THE COURT:  All right, Mr. Steinberg, have you and

11   cocounsel carefully gone, gone over this waiver with Ms. Kissick?

12         MR. STEINBERG:  Yes, Your Honor.  We explained all of

13   her rights.

14         THE COURT:  And are you satisfied that Ms. Kissick has

15   entered that waiver in a knowing and voluntary fashion?

16         MR. STEINBERG:  Yes.

17         THE COURT:  All right.  Then based on these answers,

18   Ms. Kissick, the Court finds that you have waived your right to

19   indictment in a knowing and voluntary fashion and that you've had

20   the full advice of counsel with that decision.  So the waiver is

21   granted, and that allows the government to file the following

22   charge against you, and that's contained in a four-page criminal

23   information.  I assume you have a copy of that information.

24         THE DEFENDANT:  Yes.

25         THE COURT:  Or have you seen it?

1          THE DEFENDANT:  I've seen it, yes.

2          THE COURT:  So I'm going to summarize it for you, but

3    essentially, the government has charged that beginning in or about

4    the year 2002 and continuing through August of 2009, in the

5    Eastern District of Virginia and elsewhere, that you knowingly and

6    intentionally conspired with others to commit three crimes against

7    the United States, specifically, bank fraud, wire fraud, and

8    securities fraud.

9          And then it's alleged among -- in paragraph 2 of this

10   criminal information that you and coconspirators among other

11   things caused the transfer of funds between Taylor, Bean &

12   Whitaker Mortgage Corporation bank accounts at Colonial Bank in an

13   effort to hide TBW overdrafts, and it goes on in Count 2 to go

14   through other specific acts that were done in furtherance of this

15   conspiracy, including submitting materially false information to

16   the FDIC and to the SEC in furtherance of applications for the

17   Troubled Asset Relief Program funds.

18         That's the nature of this conspiracy:  mail fraud, bank

19   fraud, and securities fraud.  Do you understand that?

20         THE DEFENDANT:  Mail fraud?

21         THE COURT:  I'm sorry.

22         MR. CONNOLLY:  Wire fraud.

23         THE COURT:  I'm sorry, wire fraud, not mail fraud.

24         THE DEFENDANT:  Okay.

25         THE COURT:  Wire fraud, bank fraud, and securities

1   fraud.

2          MR. STEINBERG:  Yes.

3          THE COURT:  That's the nature of the conspiracy charge.

4   Now, to this charge, how do you want to plead, guilty or not

5   guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  All right, Ms. Kissick, before the Court

8   accepts your guilty plea, I'm going to review with you both the

9   plea agreement you have with the government and the statement of

10  facts.  At any point this morning while I'm asking you these

11  questions if you should change your mind and decide you don't want

12  to plead guilty, you can stop the process.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  The plea agreement that's been

16  filed in court today is 15 pages long, and I see what appears to

17  be your signature on page 14.  Did you, in fact, sign the written

18  plea agreement?

19         THE DEFENDANT:  Yes, I did.

20         THE COURT:  And again, that has today's date, so you

21  signed it today; is that correct?

22         THE DEFENDANT:  I signed one a couple weeks ago, but

23  then I signed this one today.

24         THE COURT:  All right.

25         MR. STEINBERG:  And that only had the case number on it

1  is the only real difference.

2          THE COURT:  The one that we have today.

3          MR. STEINBERG:  Right.

4          THE COURT:  All right.  Ms. Kissick, approximately when

5  did you first start seeing drafts of the plea agreement?  I don't

6  need the exact date.  Approximately when?

7          THE DEFENDANT:  I think December '09 or January 2010.

8          THE COURT:  All right.  In other words, you've had this

9  plea under -- a plea under consideration for a significant amount

10 of time?

11         THE DEFENDANT:  A version of, yes.

12         THE COURT:  All right.  And obviously, there have been

13 different versions of the plea and I assume also the statement of

14 facts as time has gone by?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  And have you carefully discussed

17 each of those versions with your counsel?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  Now, I'm particularly and only

20 interested really in the one that's in court today, all right?  So

21 I want to make sure first of all that you take a look at page 14

22 of the plea agreement, and right above your signature are two

23 sentences that I want to make sure you appreciate are part of

24 this.  They go, "I have read this plea agreement and carefully

25 reviewed every part of it with my attorney.  I understand this

1  agreement and voluntarily agree to it."

2          Now, are those two sentences completely true?

3          THE DEFENDANT:  Yes.

4          THE COURT:  So you have, in fact, read this entire plea

5  agreement yourself?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And discussed it thoroughly with counsel?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Now, have you asked your lawyers

10 all the questions that you have about this plea agreement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Have they answered your questions to your

13 satisfaction?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you have any questions you want to ask me

16 about the plea agreement?

17         THE DEFENDANT:  No, ma'am.

18         THE COURT:  All right.  During the course of the plea,

19 if some questions should arise, you can talk to your counsel, or

20 you can ask me.  Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  Now, because you've told the

23 Court that you've read the entire plea agreement and discussed it

24 thoroughly with counsel and that you understand it and you're

25 voluntarily agreeing to it, that means you will be bound by

1    everything written in this plea agreement even if I don't go over

2    every paragraph or page with you in court today.  Do you

3    understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  The reason for that result is that in

6    essence, this plea agreement is really a written contract between

7    you and the United States government, and you know -- you have a

8    master's degree, and you're in the business world -- when you sign

9    a written contract after having thoroughly discussed it with

10   counsel and a person understands it when she signs it and signs it

11   voluntarily, then that document becomes a binding legal

12   instrument, and you can't just come back to court in a couple of

13   weeks and say, "I thought more about page 4.  I don't like it.  I

14   want to change it."  That's too late.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Now, other than the 15-page plea agreement

18   and the statement of facts, which is incorporated in the plea

19   agreement, has anybody promised or suggested to you any other

20   relief, or do you feel you have any other kind of side deal or

21   understanding with any bank examiners, SEC investigators,

22   investigators for this case, prosecutors, or anybody else?

23             THE DEFENDANT:  No.

24             THE COURT:  Mr. Steinberg, is that counsel's

25   understanding as well, that there are no, no side deals or

1  understandings other than what's in this plea agreement?

2         MR. STEINBERG:  That is correct.

3         THE COURT:  Do the prosecutors have a concern about

4  that?

5         MR. CONNOLLY:  No, Your Honor.  Just that I would note

6  that this morning, I believe the Securities and Exchange

7  Commission filed a civil complaint as well.

8         THE COURT:  Well, that wouldn't be an agreement.  I

9  mean, I'm looking for, you know, there may be side effects of this

10 plea.

11        MR. CONNOLLY:  It's a settlement agreement not with us,

12 Your Honor.

13        THE COURT:  The settlement agreement, oh, I'm sorry.

14        MR. CONNOLLY:  Correct.  It's a separate civil action,

15 but just you said anything else, bank examiners, any others, and

16 my understanding is that a civil settlement agreement was filed

17 this morning.

18        THE COURT:  Ms. Kissick, are you aware of that?

19        THE DEFENDANT:  I signed it in August.  I didn't know

20 when they were going to file it.

21        THE COURT:  All right.  But that's not any part of this

22 plea agreement.

23        THE DEFENDANT:  No.

24        THE COURT:  Or is it?

25        MR. CONNOLLY:  It's not, Your Honor.

1          THE COURT:  All right.

2          MR. CONNOLLY:  I understood your question to be more

3    broad.

4          THE COURT:  Fine, all right.

5          And, counsel, were you involved in that settlement

6    agreement?

7          MR. STEINBERG:  I was -- Mr. Sands is aware of it.

8          MR. SANDS:  Yes, I was, Your Honor, and it was my

9    understanding that it will be filed today.

10          THE DEFENDANT:  Oh.

11          THE COURT:  Because the plea is going forward today?

12    I'm just curious, is that what the timing is what it is?

13          MR. SANDS:  Again, I can't look into the minds of the

14    people who are doing it, but I think that that's the case, yes.

15    They've indicated to me that they were going to hold off until

16    after a plea was entered in this case.

17          THE COURT:  Well, it's not yet entered, so they've

18    jumped the gun by perhaps a few minutes or hours.  That's

19    presuming that I'll accept the plea, but I don't mean to give

20    anybody a heart attack.  I'm sure we're going to go forward just

21    fine today.

22          In any case, though, Ms. Kissick, I want to make sure,

23    again, do you think you have any other understanding or deal with

24    any government authorities concerning this case which is not

25    clearly reflected in the plea agreement?

1          THE DEFENDANT:  No.

2          THE COURT:  All right.  Then I want you to turn to page

3   1, paragraph 1.  There it says you've agreed to waive indictment,

4   which you have just done, and to enter a guilty plea to the

5   criminal information I summarized for you, which charges the

6   conspiracy to commit bank fraud, wire fraud, and securities fraud.

7          Now, that conspiracy carries a possible maximum penalty

8   of 30 years in prison followed by a period of up to five years of

9   supervised release.  In addition, you could be required to pay a

10  fine of $250,000 or alternatively a fine of not more than greater

11  than twice the gross gain or twice the gross loss for the offense

12  as well as full restitution to the victims and a special automatic

13  special assessment of $100.

14         Do you understand the penalties you're exposed to with

15  this plea?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Now, parole is not available in the federal

18  system, and that means whatever term of imprisonment is imposed

19  must be fully served.  Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  The supervised release portion of the

22  sentence does not begin until the prison portion has been

23  satisfied.  When a person is on supervised release, she is under

24  the control of a federal probation officer, and there may be

25  requirements to do certain things.

1          For example, in a crime involving financial issues,

2     there are usually limitations on the ability of the defendant to

3     spend certain sums of money, a requirement that financial records

4     be produced to the probation officer at his or her direction.   If

5     there were restitution obligations, there's usually some sort of a

6     monetary requirement, monthly minimum payments, that sort of

7     thing.

8          I can't give you all the details yet as to what

9     supervised release would have as conditions, because I haven't

10    seen the presentence report, but what you need to understand is

11    that if you violate any condition of supervised release, the Court

12    can punish you by sending you back to prison, and that could be

13    for as long as the period of supervised release, which is five

14    years.   Do you understand that?

15          THE DEFENDANT:   Yes.   Yes.

16          THE COURT:   Now, when it comes time for sentencing, the

17    Court is first of all going to have to determine the federal

18    sentencing guidelines that apply to your case, and the way the

19    guidelines operate -- and I'm sure your counsel have discussed

20    them with you -- but the Court needs to make two decisions, and

21    then the guidelines can be calculated.   We first have to determine

22    your criminal history.

23          Criminal histories are divided into six categories,

24    depending upon the number of convictions, probation or parole

25    violations, and other matters.   A level I criminal history goes to

1    someone who's never been in trouble with the law or has a very

2    minor record, and then as convictions and, as I said, other

3    problems occur, the score goes up, with a level VI going to the

4    most serious offenders.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Then the Court has to determine the offense

8    level.  Now, every federal crime has a number given to it by the

9    Sentencing Commission, and then depending upon the particular

10   facts of the case, that number can go up or down.  In paragraph 6

11   of your plea agreement, you and your counsel and the government

12   have agreed to certain factors for the guidelines.  This agreement

13   in paragraph 6 is binding on you and your counsel and the

14   prosecutors but in no respect binds the Court or the probation

15   officer.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Specifically, paragraph 6.a, in paragraph

19   6.a, you and the government have agreed that the base offense

20   level for the conduct charged in the criminal information is a

21   level 7, and then in paragraph 6.b, there's an indication that

22   because there were more than 250 victims and the conduct in Count

23   1 substantially jeopardized the safety and soundness of a

24   financial institution, there will be various upward adjustments,

25   and I think in this case, it's eight according to what you have in

1    that paragraph.

2            In paragraph 6.c, there's an indication that

3    sophisticated means were used, and that would qualify for a

4    two-level increase; and in paragraph 6.d, you and the government

5    have agreed that your involvement in this conspiracy would be as

6    an organizer or leader of more than five participants and

7    therefore would qualify for a four-level enhancement.

8            Lastly, in paragraph 6.e, there's a -- you have agreed

9    that you willfully obstructed or impeded or attempted to obstruct

10   or impede the administration of justice and that that would result

11   in a two-level increase.

12           I note from other pleas I've taken in this case that the

13   parties have not agreed to a monetary loss amount.

14           MR. CONNOLLY:  That's correct, Your Honor.

15           MR. STEINBERG:  That is correct.

16           THE COURT:  All right.  So that's an issue obviously

17   that the parties are going to be free to discuss.  But in any

18   case, in paragraph 6.f, the government has agreed that if you

19   qualify for the two-level reduction to the offense level for full

20   acceptance of responsibility, the government will ask the Court to

21   add one more level decrease.  A three-level decrease for

22   acceptance of responsibility is the maximum.  There are no other

23   levels that can be added for that.

24           Is that your understanding of the agreement as to

25   sentencing factors?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  As I said, that agreement is

3    binding on you and your counsel and the government.  It's not

4    binding on the Court, so at the sentencing hearing, I may find

5    different factors.  I may not give you a leadership role, for

6    example, or I may find that there are fewer than 250 victims.

7          On the other hand, one of the big factors that's not

8    listed here is the amount of loss.  The more loss involved, the

9    higher the level is going to be.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  But in the end, we have two

12    numbers, a criminal history number and the offense level number,

13    and those are put on a one-page chart, and that establishes the

14    advisory guideline range.  Now, the Court is required to look at

15    that range but is not required to sentence within it, and if the

16    Court has good reasons to sentence above it or below it, the Court

17    may do so.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  So in addition to the guidelines, the Court

21    is also going to look at all of the factors in section 3553(a) of

22    Title 18, which requires the Court to look at, in depth at a

23    person's entire background:  financial, family, health, employment

24    background.

25          The Court also has to look at the need for deterrence,

1   and that involves two factors:  one, the particular defendant.

2   Does she have a record such that a long sentence is necessary to

3   guarantee or to improve the chances that she will not repeat that

4   criminal conduct?  That's called individual deterrence.

5          Another factor the Court has to look at is general

6   deterrence, and that is, what message this case needs to send to

7   other similarly situated people to make sure that they don't

8   engage in such criminal activity.  And the Court has to look at

9   other persons involved in the conspiracy and the kinds of

10  sentences that they get, so it's a complicated calculus that goes

11  on, but in the end, the Court will determine the sentence.

12         Now, I'm assuming that you have discussed, because most

13  defendants do this, with your counsel what their estimate is as to

14  the type of punishment or sentence you may be getting in this

15  case.  Have you had those type of discussions?

16         THE DEFENDANT:  Yes, we have.

17         THE COURT:  I'm sorry?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  And your lawyers have most

20  likely given you estimates.  Some of those estimates may be based

21  upon different factors, like if the judge makes this finding, then

22  you might get this kind of a sentence, or if such-and-such a thing

23  happens, then it's more likely that this might be the outcome.

24         Have you had that general type of discussion with

25  counsel?

1          THE DEFENDANT:  Yes.

2          THE COURT:  What I want to make sure you understand is

3    that no matter what your lawyers may have told you they expect or

4    they hope you will get as a sentence or, for that matter, if the

5    prosecutors or any investigators have given you their ideas about

6    what kind of sentence you may get, none of those discussions in

7    any respect bind or limit the probation officer who prepares the

8    presentence report or this Court when it goes to sentence you.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And so if at the sentencing hearing you

12   receive a sentence that is different from what you're expecting or

13   hoping for, that will not give you a basis to withdraw your guilty

14   plea.  Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Now, normally a defendant in a criminal case

17   has the right to appeal the sentence imposed on her, but if you

18   look at paragraph 5 of your plea agreement, that's on page 3, and

19   it's the second sentence of that paragraph, beginning with the

20   word "nonetheless," as a condition of this plea agreement, you are

21   knowingly waiving -- again that same word, which means giving

22   up -- the right to appeal both your conviction for the conspiracy

23   and any sentence within the statutory maximum, and that means as

24   long as the Court does not sentence you to more than 30 years in

25   prison followed by five years of supervised release and the fine

1   imposed is not more than $250,000 or the alternative of not more

2   than the greater of twice the gross gain or twice the gross loss

3   and the $100 special assessment is not more than $100, then you

4   cannot appeal the sentence for any reason.

5           Do you understand that?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  All right.  Now, in exchange for your guilty

8   plea, the government has agreed in paragraph 10 that it will --

9   when I say "the government," the United States will not further

10  prosecute you for the specific conduct described in the

11  information and the statement of facts.

12          Now, it goes on to say, and I have told the prosecutors

13  this, I'm not convinced that that's a correct statement of the

14  law, because the first sentence says the United States, and that's

15  the whole United States, is not going to criminally prosecute this

16  defendant again for activities related to this case, but it goes

17  on in the next -- second sentence to say, "The defendant

18  understands that this agreement is binding only upon the Fraud

19  Section of the Criminal Division . . . and the Criminal Division

20  of the United States Attorney's Office for the Eastern District of

21  Virginia."

22          It does not bind the Civil Division of the United States

23  Department of Justice or the United States Attorney's Office or

24  bind any other section of the Department of Justice.

25          It's my view that the criminal sections, all criminal

1    charges against this defendant would be barred.  I don't think

2    that's ever going to be an issue, and you'd have to litigate it,

3    but I don't think the Justice Department can split itself up that

4    way.  It's one entity.

5           U.S. attorneys are different.  Each U.S. attorney is a

6    separate presidential appointee, and one U.S. attorney cannot bind

7    another U.S. attorney, so this -- in my view, paragraph 10 clearly

8    binds the federal prosecutors here in the Eastern District of

9    Virginia.  And civil matters are different, and so I don't think

10   there's any problem that I have with that, but I'm just letting

11   you know for the record, I don't think that portion of the

12   agreement would be enforceable if you had another section of the

13   Criminal Division of the Department of Justice going after the

14   defendant for actions related to this case.

15          MR. STEINBERG:  Yes, Your Honor.

16          THE COURT:  Do you understand what I've just said,

17   Ms. Kissick?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  But so that you're clear, if you

20   were -- the Florida authorities, for example, the U.S. attorney in

21   Florida could bring fraud charges against you down there even if

22   they were related to this case unless there was a jeopardy issue,

23   because again this U.S. attorney can't bind the U.S. attorney in

24   Florida unless he or she signs off.

25          Do you understand that?

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right.  Now, in paragraph 11 of this

3    plea agreement, you've agreed to cooperate with the government,

4    and that cooperation is described in subparagraphs a through f,

5    but the cooperation agreement includes among other things your

6    agreement to testify truthfully and completely at any trials,

7    grand juries, or other judicial proceedings.

8           Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Or administrative proceedings for that

11   matter.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You've also agreed to be reasonably

14   available for debriefings and pretrial conferences as the United

15   States requests and to provide any documents, records, or other

16   materials to the government for its use in any criminal or civil

17   matter.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  In paragraph 12, you've agreed -- the

20   government has agreed it will not use against you either to bring

21   a new prosecution or to increase your sentence any completely

22   truthful information you provide under paragraph 12.  Do you

23   understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  Now, paragraph 16 addresses some

1   of the issues that may result from your plea, and you've agreed in

2   paragraph 16 to the entry of an order of prohibition, and that

3   will prohibit you from further participation in activities or

4   employment that involves the Federal Deposit Insurance Act.   In

5   other words, I think that means any employment in a bank that's

6   insured by the FDIC.

7               Is that correct, counsel?

8               MR. STEINBERG:  Yes.

9               THE COURT:  All right.  And that order of prohibition,

10  is that going to be entered today or at the time of sentencing?

11              MR. CONNOLLY:  I don't believe it's going to be entered

12  today, Your Honor.

13              THE COURT:  All right.  At the time of sentencing, all

14  right.

15              But you understand that the result of this conviction if

16  the plea is accepted, Ms. Kissick, is that your ability to work in

17  the banking industry is going to be significantly reduced?

18              THE DEFENDANT:  I understand.

19              THE COURT:  All right.

20              MR. CONNOLLY:  Just to clarify, Your Honor, I don't

21  believe that that's entered in federal court.  I think that might

22  be internally entered by the FDIC.  I can certainly check on that,

23  or in OTS, but I'm not sure that that's something that's filed in

24  a federal proceeding, but we'll check on that.

25              THE COURT:  But I just want to make sure that

1  Ms. Kissick understands that, I mean, as part of what's going to

2  happen in this case, a ramification of it is that she's going to

3  have significant, most likely lifetime restrictions on being able

4  to work in certain areas that I guess you've worked in the past.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  In paragraphs 17 through 19, the

8  plea agreement addresses the issue of forfeiture.  A defendant who

9  obtains monies through fraud or other illegal activity can wind up

10 having to forfeit or give that money back to the United States

11 government, and therefore, you have in paragraphs 17 through 19

12 agreed to forfeit among other things any interest that you have in

13 any asset valued at more than a thousand dollars obtained within

14 the last eight years if that can be traced back to the illegal

15 activity.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Now, at this time, does the government

19 expect there'll be a forfeiture order in this case?

20         MR. CONNOLLY:  It's unclear at this point in time, Your

21 Honor.  I believe in the statement of facts, there is a statement

22 about -- let me just find it, Your Honor.  The Court's indulgence?

23         Your Honor, at this point, it's the government's

24 understanding that Ms. Kissick did not derive anything directly as

25 part of this scheme.  However, we're still -- as part of this plea

1   agreement, we'll be getting a financial statement from her at some

2   point.

3              THE COURT:  All right.

4              MR. SANDS:  I believe what he was referring to, Your

5   Honor, is on page 2.  There's a sentence that says the defendant

6   did not personally receive funds paid out by Colonial Bank to TBW

7   as a result of the scheme to defraud.

8              THE COURT:  All right.  Nevertheless, what you need to

9   understand, Ms. Kissick, is that under your plea agreement, the

10  government is not prohibited from bringing forfeiture actions

11  against you.

12             THE DEFENDANT:  I understand.

13             THE COURT:  And you've agreed to basically cooperate

14  with those actions, all right?

15                      (Defendant nodding head.)

16             THE COURT:  Now, the government has also indicated in

17  this plea agreement and you've agreed that you will be responsible

18  for restitution.  The amount of the restitution has not yet been

19  determined, but that's in paragraph 9 of the plea agreement.  So

20  that's a significant -- could potentially be a very significant

21  financial burden that will be inflicted upon you as part of the

22  sentence.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  But it's also my understanding

1  from the structure of the plea agreement that counsel will be able

2  to argue about the reasonableness of the restitution, because

3  you've not committed to a loss amount in this case.  Is that

4  everybody's understanding?

5          MR. STEINBERG:  That is correct.

6          THE COURT:  All right.  The government's as well?

7          MR. CONNOLLY:  Yes, Your Honor.

8          THE COURT:  All right.  Now, Ms. Kissick, most

9  defendants who cooperate with the government do so with the hope

10 that the cooperation will result in some benefit at the -- with

11 the sentence, and that can happen in one of two ways, and that is

12 addressed in paragraph 15 of the plea agreement on page 9.  There

13 are two ways in which a defendant's cooperation can be rewarded.

14         The first is if either before or at the time of

15 sentencing, the government files a 5K1.1 motion which basically

16 asks the Court to depart downward from the guideline range because

17 of the defendant's substantial assistance.  The other type of

18 motion is a Rule 35(b) motion.  That motion is filed after a

19 person has been sentenced, and it asks the Court to reduce the

20 sentence.

21         What paragraph 15 makes clear is that the government has

22 not promised or guaranteed to you that even if you cooperate, you

23 will have the benefit of one of these motions filed on your

24 behalf, and your counsel can't file one of those motions.  Only

25 the government can file it, and so if the government does not file

1  one of those motions, that is not a violation of the plea

2  agreement, and it would not give you a basis to withdraw your

3  guilty plea.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Even if the government files such a motion,

7  the Court is not required under the plea agreement to grant the

8  motion or to grant as much of the motion that the government

9  requests.  For example, let's say that the government filed a Rule

10 35(b) motion asking the Court to reduce your sentence by 60

11 percent because of cooperation and I felt based upon the facts of

12 the case or how other people have been treated in the case that

13 only a 30 percent reduction was appropriate and that was my

14 decision.  That would not violate the plea agreement, and it would

15 not give you a basis to withdraw your guilty plea.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Now, have you had enough time to discuss

19 with your counsel everything you know about this case?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And have counsel -- have you been able to

22 adequately talk with counsel about any ways in which you could

23 possibly defend yourself against the case?  In other words, have

24 your lawyers told you, well, the government has this evidence,

25 we've had some preliminary discovery, here are the issues in the

1   case, we could try to do this, we could try to do that, but, you

2   know, what the likelihood of success is?  I mean, that kind of

3   cost/benefit analysis, have you gone through that with your

4   counsel?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Are you fully satisfied with the way in

7   which your counsel have worked for you in this case?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And do you understand that you still at this

10  time have a right to plead not guilty and to go to trial on the

11  criminal information?

12          THE DEFENDANT:  I understand that.

13          THE COURT:  If you did go to trial, then the burden

14  would be on the government, and that is a burden of proof beyond a

15  reasonable doubt in order for them to convict you.  Now,

16  specifically in a conspiracy case, in order to convict a

17  defendant, the government has to prove all of the essential

18  elements of the charge beyond a reasonable doubt.

19          So they have to prove that there was between 2002 and

20  August of 2009 a conspiracy, that is, an agreement between at

21  least two people to violate certain federal laws, specifically,

22  the statutes that prohibit bank fraud, wire fraud, and securities

23  fraud.  Then they have to prove beyond a reasonable doubt that at

24  some point during the life of that agreement, you became aware of

25  the agreement and knowingly and intentionally involved yourself in

1    the agreement.

2            Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And they have to prove that at least one act

5    in furtherance of that conspiracy occurred in the Eastern District

6    of Virginia, and in this case, again, venue is established in

7    criminal cases if even one act occurs in furtherance of the

8    conspiracy.  So if you sent wire communications into the Eastern

9    District of Virginia to the SEC or any of these wire transmissions

10   came into Virginia, that's enough to bring the conspiracy here.

11           Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And, counsel, I assume you talked about the

14   venue issues with your client?

15           MR. STEINBERG:  Yes, Your Honor.

16           MR. SANDS:  Yes, Your Honor.

17           THE COURT:  All right.  Now, if you chose to plead not

18   guilty and go to trial on this charge, you'd have certain

19   protections that you're giving up by pleading guilty.  First you

20   could see all the government's witnesses and evidence and test it

21   through the questions of your lawyer.  Do you understand that?

22           THE DEFENDANT:  I do.

23           THE COURT:  You could ask the Court to issue subpoenas

24   that would require the presence at the courthouse of witnesses or

25   physical evidence so you could use that information in your

1   defense at trial.  Do you understand that?

2           THE DEFENDANT:  I do.

3           THE COURT:  You could testify as a witness at trial.  Do

4   you understand that?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  You could also invoke your Fifth Amendment

7   right to remain silent, and if you chose not to testify, no

8   inference of guilt could be drawn from that silence.  Do you

9   understand that?

10          THE DEFENDANT:  I do.

11          THE COURT:  You would, of course, have the right to the

12  help of counsel throughout any trial, and if you could not afford

13  to pay for an attorney on your own, then we would have a

14  taxpayer-appointed counsel for you.  Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  If you continued with a not guilty plea, you

17  could choose how your case was tried.  You could have a trial

18  before a judge alone, which is called a bench trial, or a trial by

19  jury, in which case 12 ordinary citizens would be brought together

20  to try the case, but in either type of trial, you could not be

21  convicted unless the government proved your guilt beyond a

22  reasonable doubt.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  If you continued with a not guilty plea,

1    your counsel could try to attack the prosecution's case, and there

2    are many ways in which that can be done.  Whether successful or

3    not, you know, there's no way of knowing.

4             If, for example, you gave a confession or a statement,

5    there may be a basis to move to suppress the statement if you

6    didn't get proper *Miranda* warnings or if other problems occurred.

7    If there were searches of your financial records, of your home,

8    whatever, there may or may not be defects in how that was done.

9    Those are just examples of the kinds of things that attorneys can

10   sometimes do.

11            What you need to understand is that by pleading guilty,

12   you're giving up those types of attacks on the prosecution's case.

13   Do you understand that?

14            THE DEFENDANT:  Yes, I do.

15            THE COURT:  And lastly, if you pled not guilty and you

16   went to trial and you were found guilty at trial, you could appeal

17   that finding of guilt to a higher-level court.  Now, do you

18   understand that by being found guilty based upon a guilty plea as

19   well as under the terms of this plea agreement, you're giving up

20   your right to appeal your conviction?

21            THE DEFENDANT:  I understand.

22            THE COURT:  All right.  Other than the plea agreement

23   that's in court today, has anybody promised or suggested to you

24   that by pleading guilty, you would get a lighter sentence or more

25   favorable treatment by the Court?

1            THE DEFENDANT:  No one has.

2            THE COURT:  Has anyone put any force or pressure on you

3  to plead guilty today?

4            THE DEFENDANT:  No.

5            THE COURT:  All right, Ms. Kissick, the last aspect of

6  the plea agreement that we need to go over is the written

7  statement of facts, and that statement of facts is again quite a

8  few pages long.  It's 11 pages long, and on the 11th page, I see

9  what appears to be your signature.  There is no date, so I'm

10 curious, did you sign that today, or had that been signed earlier?

11           THE DEFENDANT:  It was signed earlier.

12           THE COURT:  This was signed earlier?

13           MR. STEINBERG:  This was signed earlier.  This was

14 signed approximately two weeks ago.

15           THE COURT:  All right.  Now, Ms. Kissick, before you

16 signed the statement of facts, did you read it over for yourself

17 word for word?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And discuss it thoroughly with counsel?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And do you understand that by signing this

22 statement of facts, you are admitting, No. 1, to the truth of all

23 the 21 numbered paragraphs, and you're also admitting that if the

24 case had gone to trial, the government could have proven all those

25 facts beyond a reasonable doubt?  Do you understand that?

1                THE DEFENDANT:  Yes.

2                THE COURT:  All right.  Now, again, because it's so long

3      and I have read it and you've told me you've read it, it's not my

4      intention to actually go over it with you in court today, but this

5      is your day in court.  If there's any fact in this document with

6      which you do not agree or that you think is not accurate, this is

7      the time to make that record clear.  Is there anything?

8                THE DEFENDANT:  I'm fine.  I already made the --

9                THE COURT:  I'm sorry?

10               THE DEFENDANT:  I already made my comments to Kent

11     earlier.  We got them corrected before we came here so -- before I

12     signed.

13               THE COURT:  So all the concerns that you had about the

14     accuracy have been addressed, and all those corrections have been

15     made as far as you're concerned?

16               THE DEFENDANT:  Yes.

17               THE COURT:  All right.  Now, counsel, is that correct?

18     Because this is establishing the record.  For example, the

19     Probation Office will use this statement of facts, and so if

20     there's, if there's any kind of a discrepancy between what you-all

21     say at the sentencing hearing and what's here, that could be an

22     issue about acceptance of responsibility.

23               So I want to give you-all an opportunity if there's

24     anything here that you think is not completely accurate, this is

25     the time to set the record straight.  Either counsel want to

1    address that?

2            MR. SANDS:  No, Your Honor.

3            MR. STEINBERG:  Your Honor, we, we have reviewed the

4    statement of facts --

5            THE DEFENDANT:  That's fine.

6            MR. STEINBERG:  -- and I believe that there's been

7    substantial discussion about the accuracy, and the agreement is

8    the statement of facts is accurate.

9            THE DEFENDANT:  Um-hum.

10           THE COURT:  Among other things, for example, let me just

11   point out, like, on page 7, for example, there's the statement in

12   about the fourth line down, "Despite these efforts, the government

13   would prove at trial that during the course of the conspiracy

14   charged in Count 1 of the information, the defendant and

15   coconspirators caused Colonial Bank to pay TBW more than $400

16   million for Plan B loans and fictitious AOT trades."  I mean,

17   that's a, that's a loss amount that may be relevant to the

18   sentencing.

19           MR. SANDS:  My understanding of it, Your Honor, is that

20   that is a statement that may and would be relevant to the

21   computation of the loss amount.  I wouldn't say that it's

22   necessarily dispositive of the determination of the loss amount.

23           THE COURT:  All right.

24           MR. SANDS:  And we have issues which we'll raise

25   potentially later on with regard to that.

1          THE COURT:  But you can't back off of the 400 million.

2          MR. SANDS:  No.  Believe me, Your Honor, we have had

3    long discussions about the statement of facts, and it's changed

4    over time, and that particular sentence is well thought out and

5    agreed to by the defendant and myself.

6          THE COURT:  All right.  And, Ms. Kissick, again, this is

7    your day in court.  Do you agree with what counsel just said?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right, that's fine.

10         Now, do you understand, Ms. Kissick, if the Court

11   accepts your guilty plea today, there will be no trial of the

12   issue, and you will be found guilty of this conspiracy?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you claim in any respect that you are

15   innocent of the conspiracy?

16         THE DEFENDANT:  No.

17         THE COURT:  How then do you plead?

18         THE DEFENDANT:  Guilty.

19         THE COURT:  All right.  And, Mr. Steinberg, since you're

20   right next to the defendant, have you had enough time, you and

21   cocounsel, to thoroughly go over this plea with Ms. Kissick?

22         MR. STEINBERG:  Yes, Your Honor.

23         THE COURT:  Does the plea accord with your understanding

24   of the facts and circumstances?

25         MR. STEINBERG:  Yes, Your Honor.

1          THE COURT:  In your opinion, has Ms. Kissick made her

2     plea of guilty in a voluntary and knowing fashion?

3          MR. STEINBERG:  Absolutely, yes.

4          THE COURT:  All right.  At this point, Ms. Kissick,

5     based on all these answers to the Court's questions, I'm satisfied

6     that you've entered your guilty plea in a knowing and voluntary

7     fashion, that you've had the full advice of counsel in connection

8     with the plea, and it's a plea that you've had under consideration

9     for many months, and I'm also satisfied that the written statement

10    of facts which you have acknowledged as being completely accurate

11    is more than enough evidence upon which to find you guilty beyond

12    a reasonable doubt of the plea of conspiracy, so the plea is

13    accepted, and you are found guilty of the charge.

14          Now, this was your first day in court on this case; is

15    that correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  There was no criminal complaint, so there's

18    no bond that's yet been set.

19          MR. STEINBERG:  That is correct.

20          THE COURT:  We have a report from Pretrial Services.  I

21    assume, counsel, you-all had the benefit of that report?

22          MR. STEINBERG:  Yes, Your Honor.

23          MR. CONNOLLY:  Yes, Your Honor.

24          THE COURT:  All right.  And the report recommends that a

25    bond be set, and I have no problem with that.  Does the government

1  have any objections to any of the recommendations in the report?

2          MR. CONNOLLY:  No, Your Honor.  We'd ask for a $50,000

3  PR bond, and I think counsel's going to request that travel

4  restrictions be expanded to include the entire State of Florida,

5  and we have no objection to that, Your Honor.

6          THE COURT:  All right.  Is that correct?

7          MR. STEINBERG:  That is correct.

8          MR. SANDS:  Yes, Your Honor.

9          THE COURT:  All right, let me go ahead then and start

10  working on the bond papers.

11          MR. STEINBERG:  Your Honor, in the standard conditions

12  and the conditions that Parole recommended, there is a condition

13  that Ms. Kissick not -- refrain from possessing a firearm,

14  destructive device, or other dangerous weapon.  Her husband does

15  have a, sort of a -- does have a firearm.  It's a, I believe it's

16  a rifle.

17          THE DEFENDANT:  No.

18          MR. SANDS:  It's a pistol.

19          MR. STEINBERG:  Oh, it's a pistol; I'm sorry.  It is

20  secured.  It is locked.  She has no access to it, and it is one

21  that she will not possess at all.

22          THE COURT:  All right.

23          MR. SANDS:  I have a notarized statement from her

24  husband, Your Honor, attesting to that, that it's stored in a

25  locked hard case and it's further restricted by a lock fitted over

1   the trigger guard.  He is the only person who knows the

2   combination of either lock, and he will not provide any family

3   member with access to the pistol.

4           THE COURT:  All right.  The issue about firearms is a

5   tricky one, Ms. Kissick, because you are a convicted felon at this

6   time, and there's a separate federal statute that prohibits a

7   convicted felon from possessing a firearm, and "possession" means

8   basically having it within your control.

9           So, for example, if your husband and you were driving in

10  your car and he brought the gun with him in the car and put it in

11  the console and you're sitting in the passenger seat and he's in

12  the driver's seat and the car got pulled over, you might have a

13  problem.  So he really has to be very careful, and you have to be

14  careful that you can't be anywhere around the gun, you can't be in

15  a situation where you could get access to it.

16          THE DEFENDANT:  I don't even know where it is in our

17  house.

18          THE COURT:  All right, that's fine.

19          MR. STEINBERG:  She does not like the firearm itself.

20          THE DEFENDANT:  I don't like it at all.

21          MR. STEINBERG:  So she's unlikely to possess it, Your

22  Honor.

23          THE COURT:  All right.  Let me go ahead and get a

24  sentencing date.

25          MR. STEINBERG:  Yes, Your Honor.

1          MR. CONNOLLY:  Your Honor, as this Court is aware, we

2   would ask that the Court extend out the sentencing date a bit post

3   the trial in the related matter that's set for April 4.

4          THE COURT:  Didn't we do the codefendant for June 10?

5          MR. CONNOLLY:  Yes, Your Honor.  We're happy to do it

6   the same day if it's amenable to the Court.

7          THE COURT:  Does that work for counsel?

8          MR. STEINBERG:  I am not available that date.  I am the

9   next week.

10          THE COURT:  The 17th.

11          MR. STEINBERG:  The 17th I'm available.

12          MR. SANDS:  I will make myself available.

13          THE COURT:  We can do it either time.  I mean, I don't

14   need -- I mean, I would be willing to waive Mr. Steinberg's

15   appearance, but I think there may be some other related cases that

16   will be sentencing as well, so why don't we just leave this on for

17   the 17th then --

18          MR. CONNOLLY:  That's fine.

19          MR. SANDS:  That's fine.

20          THE COURT:  -- so everybody can be present.

21          That will be at 9:00.

22          Ms. Kissick, do you have your passport with you today?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  All right, you need to hand it up.

25          All right, Ms. Kissick, I'm placing you on a personal

42

1  recognizance bond with the following conditions:  First of all,

2  you must be of uniform good behavior.  That means you're not to

3  violate any federal, state, or local laws while on supervision.

4  Do you understand that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Secondly, you have to follow all the

7  conditions that are printed in the order setting conditions of

8  release and that will be explained to you by the pretrial officer.

9  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  As special conditions, you must reappear in

12  this court on Friday, June 17, at 9 a.m. for sentencing.  Do you

13  understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  You will have to also execute an unsecured

16  bond in the amount of $50,000, and that means if for any reason

17  you violate any condition of bond, the government would have an

18  immediate judgment against you for $50,000.  Do you understand

19  that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  You must -- are you currently

22  working?

23          THE DEFENDANT:  Not really.  Consulting.

24          THE COURT:  Well, that -- are you getting paid for the

25  consulting?

1      THE DEFENDANT:  I'm taking a two-month break during the

2  trial, so -- I was getting paid, and I have one more paycheck

3  left.

4      THE COURT:  Well, it's a good thing especially since

5  you're most likely going to have some restitution, some monetary

6  aspect of this sentence, that you should work if you possibly can.

7      THE DEFENDANT:  Okay.

8      THE COURT:  All right?  So I'm going to have, I'm

9  checking the box "maintain or actively seek employment," all

10 right?

11      THE DEFENDANT:  Okay.

12      THE COURT:  I'm going to require that you are not to

13 depart the State of Florida without permission in advance from

14 Pretrial Services.  When you know you're going to come up to

15 Virginia for meeting with counsel or for sentencing, you just have

16 to give those dates to your pretrial officer in advance.

17      And if there's some legitimate reason why you have to go

18 outside of Florida for a family emergency or something, again,

19 Pretrial has to approve it, but they may approve travel outside of

20 Virginia for other purposes other than just coming to court.

21 That's up to them.  Do you understand that?

22      THE DEFENDANT:  Yes.

23      THE COURT:  All right.

24      MR. STEINBERG:  And Florida, right?

25      THE COURT:  Yes.  You are to report on a regular basis

1  as they direct, both Pretrial Services and the Probation Office.

2  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You may not possess a firearm, destructive

5  device, or other dangerous weapon.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You cannot use alcohol to excess or use or

8  possess any illegal drugs.  Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  You've just surrendered your passport.  That

11 will be kept with Pretrial Services, and you are not to obtain any

12 passport or travel documents while on bond.  Do you understand

13 that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  There -- now, does the government want -- I

16 don't think we've done this in the other ones -- do you want a no

17 contact element to this?

18         MR. CONNOLLY:  Yes, Your Honor, and we discussed that

19 with counsel and don't think that's -- not a problem.

20         THE COURT:  All right.

21         MR. CONNOLLY:  But yes, we ask for that, Your Honor.

22         THE COURT:  Is there any reason why you would have

23 contact with Desiree Brown, Lee Farkas, or anybody else that's

24 involved in this case?

25         THE DEFENDANT:  No.

1          THE COURT:  No?

2          THE DEFENDANT:  There's no reason.

3          THE COURT:  All right.  I don't want this, however, to

4    be construed as prohibiting Mr. Farkas's counsel from talking with

5    Ms. Kissick or any -- because I see Mr. Williams is here -- or any

6    other witness.  I mean, that is the right of a defense attorney to

7    try to interview people so --

8          MR. CONNOLLY:  We're not worried about this as an issue,

9    Your Honor, and that's certainly not our intent in that regard at

10   all.

11         THE COURT:  All right.  If defense counsel want to talk

12   to you, it's up to you whether you're going to talk to them or

13   not.  It's your right to talk to them, and it's your right not to

14   talk to them.

15         THE DEFENDANT:  Okay.

16         THE COURT:  You shouldn't be talking to Mr. Farkas or

17   Ms. Brown or any of these other people themselves directly, but if

18   counsel on their behalf want to talk to you, that's up to you.

19         THE DEFENDANT:  Okay.

20         THE COURT:  I recommend you consult with your attorneys

21   about that, but this is not meant to restrict that kind of a

22   contact.  Do you understand that?

23         THE DEFENDANT:  Um-hum.

24         THE COURT:  And I would also advise you -- and this is

25   not in the order, but it's on the record -- that if any of these

1  individual persons, not their attorneys but the persons

2  themselves, contact you, e-mail you, send you a letter, call you,

3  you should immediately report that to your counsel.

4          THE DEFENDANT:  All right.

5          THE COURT:  All right?  So I'm just going to say in box

6  No. (s) in paragraph 7, "no contact with codefendants unless in

7  the presence of counsel."  I think that takes care of that, all

8  right?

9          MR. CONNOLLY:  All right.

10          THE COURT:  To be more exact, it should be "No contact

11  with coconspirators," because some of those folks are not yet

12  defendants, but there are other people who are involved in this

13  activity.

14          All right, there's no history of drug abuse, so I'm not

15  requiring the mandatory drug testing, but if the Probation Office

16  feels it appropriate, they can demand a drug test from you at any

17  time, and you must comply.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And lastly, you are required to advise any

20  employer about this case and the fact that you've been, been

21  convicted.  Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Does the government have any additional

24  requests that the Court include in this bond order?

25          MR. CONNOLLY:  No, Your Honor.

1          THE COURT:  No?  Anything further from counsel?

2          MR. STEINBERG:  No, Your Honor.

3          THE COURT:  All right.  Now, when you leave court today,

4    the first thing you have to do is get these bond papers executed,

5    and then, counsel, you need to take Ms. Kissick down to the

6    Marshal's Office, where you will be fingerprinted and processed,

7    Ms. Kissick, and then over to the Pretrial Office so they can

8    enroll you in the pretrial process, and then also over to the

9    Probation Office.

10          A good deal of the interviewing, I suspect, will be done

11   in Florida.  There are Probation and Pretrial Offices down there,

12   but the people up here have to get you into the system, all right?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So, Mr. Steinberg, you know the routine.

15          MR. STEINBERG:  Yes.

16          THE COURT:  All right, very good.  Anything further on

17   this case?

18          MR. CONNOLLY:  Not from the government, Your Honor.

19          THE COURT:  All right, then we'll recess court for the

20   day.

21                    (Which were all the proceedings

22                     had at this time.)

23

24

25

48

1                    CERTIFICATE OF THE REPORTER

2        I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4

5

6                                    _____/s/_____
                                          Anneliese J. Thomson
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25